United States District Court
District of Connecticut
FILED AT NEW HAVEN

February 2    , 20 23

By     S. Santos
Deputy Clerk

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF Room 12 Devon Motel, Room 322 New Haven Village Suites, and a gray 2017 Lincoln MKX | Case No. 3:23-mj-83 (MEG)<br><br>**Filed Under Seal** |

### AFFIDAVIT

I, Ryan Halpin, being first duly sworn, hereby depose and state as follows:

**I.      INTRODUCTION AND AGENT BACKGROUND**

1.      I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been since August 2019.  I am a federal law enforcement officer within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and authorized by the Attorney General to request a search warrant.  I attended the Basic Field Training Course at the FBI Academy in Quantico, Virginia.  I am currently assigned to the New Haven Division of the FBI, where I have been tasked with investigating violent criminal street gangs and organized criminal enterprises involving the smuggling, distribution, and sale of illegal drugs.  Prior to becoming an FBI Special Agent, I was a police officer for seven years.  As a police officer, I investigated numerous crimes, including drug distribution and violent street crimes.  During my career in law enforcement, I have cultivated and operated informants, spoken to subjects of and related to violent criminal enterprises, as well as spoken to other local, state, and

federal law enforcement officers, regarding the manner and means by which criminal actors communicate and methods employed by narcotics and firearms traffickers to avoid detection by law enforcement. During my training at the FBI Academy in Quantico, Virginia, I received training in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause.

3. In connection with these investigations, I have coordinated controlled purchases of illegal drugs utilizing cooperating sources; conducted electronic and physical surveillance of individuals involved in organized criminal activity; analyzed records documenting the purchase and sale of illegal drugs and other items; and debriefed cooperating sources and drug distributors, as well as other local, state and federal law enforcement officers, regarding the manner and means employed by organized criminal enterprises.

4. I have participated in previous Title III investigations, including by monitoring intercepted communications, completing extensive toll analysis, and conducting physical and electronic surveillance of investigative targets.

5. Based on my training and experience, I know that narcotics traffickers often use cellular telephones and often speak to one another using coded, cryptic or slang words and phrases, in the belief that, by doing so, they can thwart the efforts of law enforcement to identify them and their activities and to seize their drugs and/or assets. From my experience, I am familiar with many of the codes, words and phrases that are frequently used by drug traffickers in the acquisition and distribution of narcotics. I know that drug traffickers frequently have access to several cellular telephones, and that they periodically use newly acquired cellular telephones. I also know that narcotics traffickers and distributors frequently use cellular telephones subscribed to by other persons and prepaid cellular telephones that require the purchaser to provide little or no identifying

information to purchase, activate, and utilize, all of which is done in an effort to avoid detection and thwart the efforts of law enforcement. I know, based upon my training and experience, that narcotics traffickers and distributors often segregate various aspects of their illicit business, and use different telephones when tending to each of the various aspects, in an effort to thwart law enforcement and insulate themselves and their confederates. For example, drug dealers often use one telephone to contact customers and another to contact their narcotic source(s) of supply.

6. The facts in this affidavit come from my own personal knowledge from participating in this investigation and my training and experience, and from information obtained by me from other law enforcement personnel. This affidavit is intended to show merely that there is sufficient probable cause for the requested search warrants and does not set forth all of my knowledge about this matter. It sets forth only those facts necessary to support the requested authorization.

7. On or about January 10, 2023, I submitted an affidavit to the Court in support of applications to intercept wire and electronic communications over telephone number 646-889-3523 ("Target Telephone 6"), utilized by Markos PAPPAS. The application was granted by the Court that same day, the Honorable Kari A. Dooley, U.S.D.J. Wire and electronic communications were intercepted over Target Telephone 6 from approximately January 12, 2023 through this date.

8. I believe communications intercepted to date have revealed that PAPPAS and others engaged in drug trafficking. Transcriptions of some of the calls intercepted to date are set forth below. These transcriptions are in draft form. They were prepared, in most instances, by monitors who first overheard, and if necessary translated, the intercepted calls. The draft transcripts of intercepted communications are subject to revision. The same is true of draft transcriptions of consensually recorded conversations set forth herein.

9. As discussed more fully below, there is probable cause to believe, and I do believe, that Markos PAPPAS ("PAPPAS") and other known and unknown individuals have committed drug trafficking offenses in violation of Title 21, United States Code, Sections 841(a)(1) and 846 (Possession with Intent to Distribute Controlled Substances and Conspiracy to Possess with Intent to Distribute Controlled Substances). I further submit that there is probable cause to believe that the fruits, instrumentalities and evidence of these violations will be found at or in the two Target Locations described below and in the Target Vehicle, as more specifically set forth in the enclosed attachments. I therefore submit this affidavit in support of an application for search warrants at or on the Target Locations and Target Vehicle authorizing the search of those premises or items and seizure of fruits, instrumentalities, and evidence of the Subject Offenses, as set forth more particularly in Attachment B, including but not limited to the suspected quantities of controlled substances and/or cash derived from the sale of drugs.

10. I submit this affidavit in support of search warrants for two locations and one vehicle, collectively, the "Target Locations." The Target Locations for which search warrants are sought are as follows:

   a. Devon Motel, 438 Bridgeport Avenue, unit 12, Milford, Connecticut ("Target Location 1"), described in Attachment A-1, is a red brick motel building with exterior entries to most units. The entry to unit 12 is through a common area shared with unit 11 and unit 12. A green door with number "11" and "12" on it provides entry to this common area. A green door with number "12" provides entry to unit 12 from within that common area.

   b. New Haven Village Suites, 3 Long Wharf Drive, unit 322, New Haven, Connecticut ("Target Location 2"), described in Attachment A-2, is a tan

apartment complex with several different buildings. Unit 322 is located in building 3. Entry to this apartment is a on the second floor, a blue door with "322" labeled next to the door

c. A 2017 Lincoln MKX Reserve, color gray, VIN 2LMPJ8LR2HBL29281, bearing Connecticut registration BD04167, described in Attachment A-3, currently located at the FBI New HAVEN Headquarters, 60 State Street in New Haven, Connecticut.

## PROBABLE CAUSE

11. On February 2, 2023, at approximately 9:04 a.m., PAPPAS placed a call on Target Telephone 6 (session 9202 ) to 203-449-4202, a telephone number known to be used by Lisa FAUSEL. PAPPAS asked, "Hey, sorry about that. I was on a jail call. I couldn't get off when you were calling . . . Alright, so I'm just calling . . . not to rush you or anything . . . I just wanna' know . . . uh, do you think it will be before 11 o'clock? . . . I wanna' know when I should be prepared for it." FAUSEL responded, "Shit, I don't know. I didn't hear from him. I was hoping it was gonna' be early, you know . . . you know what, let me find out." The two agreed to speak shortly.

12. That same day approximately 9:09 a.m., PAPPAS received a call on Target Telephone 6 from 203-449-4202 (Session 9205), a telephone number those investigators know to be used by Lisa FAUSEL. The following conversation took place:

PAPPAS: Hello

FAUSEL: Hey Markos

PAPPAS: Hey

FAUSEL: We are all set

PAPPAS: Okay. You want me to head up?

FAUSEL: Yeah

PAPPAS: Okay, Thanks

FAUSEL: Alright. Okay bye.

Previous intercepted conversations between FAUSEL and PAPPAS were of the same content, scheduling a time to meet. Based upon this history and the two calls intercepted on the morning of February 2nd, investigators believed that PAPPAS was arranging to pick up a quantity of controlled substances from FAUSEL who, in turn, was waiting on someone to deliver them to her. FAUSEL then called PAPPAS to confirm that she had to drugs. Investigators had previously spoken to Devon Motel management and identified Lisa FAUSEL as staying in room number 12. Recent surveillance and Target Telephone 6 pings indicated that PAPPAS visited FAUSEL at this location on January 26 and 30, 2023.

13. On February 2, 2023, investigators established stationary surveillance in the area of the Devon Motel prior to PAPPAS' arrival. At approximately 9:31 a.m., a grey Lincoln SUV bearing Connecticut registration BD01467 (the Target Vehicle), known to be driven by PAPPAS arrived at the Devon Motel. PAPPAS was observed exiting his vehicle and walking towards room number 12. Investigators could not see which unit PAPPAS entered based on the vantage points available.

14. At approximately 9:51 a.m., PAPPAS was observed walking away from room number 12 with a paper bag in his hands. PAPPAS was not observed exiting a specific unit, however, he was observed exiting from an area which would have only been unit 11 or unit 12. PAPPAS entered his vehicle with the paper bag in his hands and left the area.

15. PAPPAS' vehicle then entered the on-ramp for route 95 north. At approximately 10:01 a.m., PAPPAS' vehicle was stopped by a Connecticut State Trooper for a traffic violation in the area of exit 41.

16. At approximately 10:32 a.m., Target telephone 6 received an incoming call from an unknown male using telephone 203-343-9080 ("UM9080"). The following conversation took place:

PAPPAS: Aight, I'm taking off

UM9080: You good?

PAPPAS: No. I'm 'bout to…I gotta go…where you at?

UM9080: I'm at the hotel

PAPPAS: Aight, I'ma come to the hotel and get you…you take me to the police station. I had a stop, then I took off. Uh…uh…I wasn't comfortable with how that was going. Um…I'ma pick you up, you take me to the police station. I turn myself in and [U/I]

UM9080: I got you

PAPPAS: And um… [Voices Overlap]

UM9080: I got you [U/I]

PAPPAS: Get the bondsman ready for me

UM9080: Aight, give me like two minutes.

PAPPAS: I'm right around the corner. I'm 'bout to come [Voices Overlap]

UM9080: I'm getting…I'm getting dress now.

PAPPAS: Aight

UM9080: Bye

17. Investigators learned that PAPPAS fled from Connecticut State Police during the traffic stop ("…I had a stop, then I took off. Uh…uh…I wasn't comfortable with how that was going.") Investigators also believed that in the calls to UM9080, PAPPAS provided information as to where he was heading ("…I'ma come to the hotel and get you..") indicating that it was a "hotel." Investigators suspect that PAPPAS had drugs in the paper bag that he took from FAUSEL's room at the Devon Motel and further believe that PAPPAS fled the traffic stop to conceal those drugs and then turn himself in to police ("…you take me to the police station. I turn myself in.")

18. On the same date at approximately 10:37 a.m., PAPPAS made an outgoing call from Target Telephone 6 to UM9080 (Session 9221), the following conversation took place:

UM9080: I'm done getting dressed up. [U/I] lobby in two minutes.

PAPPAS: I'm right here by your car.

UM9080: Alright

PAPPAS: Gotta gonna give you something real quick.

19. I believe that PAPPAS called UM9080 to further advise that he had to give something to UM9080 prior to the UM9080 taking PAPPAS to the police station ("Gotta gonna give you something real quick.") I believe that PAPPAS was giving the drugs to UM9080 to conceal in UM9080's apartment prior to UM9080 bringing PAPPA to the police station.

20. Pen and ping and Court-authorized GPS location information on Target Telephone 6 was received at 10:38 a.m., indicating that PAPPAS was in the area of 40 Sargent Drive in New Haven, Connecticut.

21. Previously, on January 17, 2023, PAPPAS and UM9080 engaged in a conversation (Session 7108) indicating that they were going to meet up. In the following call (Session 7110),

PAPPAS indicated that he was at the "hotel" of UM9080, at the gate. Ping location information showed PAPPAS in the area of 40 Sargent Drive at that time. Physical surveillance did not locate PAPPAS during this short visit, but did observe an apartment complex to have a gate and be within the ping location area. This complex is the New Haven Village Suites, located at 3 Long Wharf Drive in New Haven.

22. Investigators responded to the area of the New Haven Village Suites on this date in anticipation of PAPPAS fleeing to that area. Investigators observed PAPPAS' vehicle, the Target Vehicle, unoccupied. At approximately 10:48 a.m., investigators at this location observed PAPPAS in the parking lot having come from an unknown apartment. PAPPAS entered a vehicle with two other individuals, one of who was recognized by investigators as Julio Echevarria. Law enforcement personnel were able to stop the Jeep and detain PAPPAS until he was taken into custody by Connecticut State Police for fleeing the traffic stop.

23. Investigators on scene at the New Haven Village Suites observed the historical surveillance video footage for this location in attempt to determine the unit number that PAPPAS entered and exited. The surveillance footage showed PAPPAS initially ascending the stairs that leads only to apartment 321 and apartment 322. PAPPAS is then observed on the surveillance footage exiting down those same steps just prior to investigators observing him in the parking lot. Management at this location confirmed that Julio Echevarria lived in unit 322.

24. Based upon the calls set forth above and the actions of PAPPAS on February 2nd, investigators believe that PAPPAS brought the drug quantity from his vehicle to this apartment when he went inside based on the conversation. PAPPAS was not observed carrying anything when he went into the apartment, however, investigators know that quantities of drugs could be concealed within one's clothing, especially because PAPPAS was wearing a large sweatshirt with

a hood. The Target Vehicle, which was still parked at the New Haven Village Suites, was seized by the FBI as evidence and in anticipation of a search warrant application. A West Haven Police Department K-9 trained in detecting illegal narcotics was then brought to the New Haven Village Suites, was run around the perimeter of the Target Vehicle, and then alerted to the presence of narcotics on the pillar between the driver side front and rear seats.

25. Later on February 2, 2023 around 12nn, investigators went to Room 12 of the Devon Motel (Target Location 1), and knocked on the door. Lisa FAUSEL answered the door and invited the investigators to come in the room, after investigators identified themselves as law enforcement. FAUSEL stated that "Markos" just left her room and that he took a paper bag that he had dropped off to her several days earlier. FAUSEL stated that the bag was kept in a Styrofoam cooler with nothing else. FAUSEL claimed that she did not know what was in the paper bag. FAUSEL allowed agents to take the Styrofoam cooler outside of the room, which investigators did. A West Haven Police Department K-9 trained in detecting illegal narcotics was then brought to the motel and alerted to the presence of narcotics on the container. Based upon my training and experience, I understand that K-9 alerts can be to residue left when drugs are removed from a container like a cooler. FAUSEL declined to allow investigators to search Room 12.

26. Target Locations 1 and 2 have been secured by FBI and DEA agents and officers since the events described herein in anticipation of search warrant applications.

27. Based on the evidence as a result of the investigation in this case, there is probable cause to believe and I do believe that the Target Locations and Target Vehicle as more fully described in Attachment A-1 through A-3, contain contraband, fruits, instrumentalities and evidence of the Target Offenses, or property that is or has been used as a means of committing the Target Offenses.

Respectfully Submitted,

RYAN HALPIN
Digitally signed by RYAN HALPIN
Date: 2023.02.02 16:58:23 -05'00'

RYAN HALPIN
SPECIAL AGENT, FBI

Subscribed and sworn over the telephone on February 2, 2023

Maria E. Garcia
Digitally signed by Maria E. Garcia
Date: 2023.02.02 17:09:43 -05'00'

Maria E. Garcia
United States Magistrate Judge

## ATTACHMENT A-1

**Property to Be Searched**

Devon Motel, 438 Bridgeport Avenue, unit 12, Milford, Connecticut ("Target Location 1"), is a red brick motel building with exterior entries to most units. The entry to unit 12 is through a common area shared with unit 11 and unit 12. A green door with number "11" and "12" on it provides entry to this common area. A green door with number "12" provides entry to unit 12 from within that common area.




**Attachment A-2**

**Property to Be Searched**

New Haven Village Suites, 3 Long Wharf Drive, unit 322, New Haven, Connecticut ("Target Location 2"), is a tan apartment complex with several different buildings. Unit 322 is located in building 3. Entry to this apartment is a on the second floor, a blue door with "322" labeled next to the door



**ATTACHMENT A-3**

**Property to Be Searched**

A 2017 Lincoln MKX Reserve, color gray, VIN 2LMPJ8LR2HBL29281, bearing Connecticut registration BD04167, currently located at the FBI New HAVEN Headquarters, 60 State Street in New Haven, Connecticut.

## ATTACHMENT B

### Particular Things to be Seized

The following items evidencing violations of, violations of 21 U.S.C. §§ 841(a)(1) and 846 (conspiracy to distribute and to possess with intent to distribute and distribution of controlled substances) specifically:

a. Any controlled substance (all of which could be in any form) and items containing residue of controlled substances;

b. Paraphernalia used and commonly associated with the possession and distribution of controlled substances, including, but not limited to: scales, packaging materials, including plastic baggies, plastic or glass vials, heat sealing machines, pipes, grinders, funnels, presses, sifting screens and/or strainers, and any materials used for "cutting" or diluting controlled substances;

c. Any books, records, receipts, notes, ledgers, journals, travel documents and other papers relating to the purchase and distribution of controlled substances;

d. United States currency, money counters, and safes or other security type boxes;

e. Personal effects tending to establish proprietary interest, including but not limited to, personal identification, driver's licenses, vehicle registration certificates, passports, birth certificates and deeds;

f. cellular telephones; and

g. firearms, ammunition and other weapons.